IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROBERT J. RAY and
AMELIA RAY                                                                                              PLAINTIFFS


VS.                                           CASE NO. 07-CV-1076


ALBEMARLE CORPORATION
and MARCUS THOMAS                                                                               DEFENDANTS

### MEMORANDUM OPINION

Before the Court is a Joint Motion for Summary Judgment filed by Defendants Albemarle Corporation and Marcus Thomas. (Doc. 19). Plaintiffs, Robert Ray and Amelia Ray, responded. (Doc. 24). Defendants replied. (Doc. 27). The Court finds this matter ripe for consideration.

### BACKGROUND

The parties agree to the following facts. Plaintiff Robert J. Ray was working on the premises of Defendant Albemarle Corporation ("Albemarle") on September 29, 2006. On this day, Mr. Ray sustained injuries to his left leg as a result of a pipe falling on him. This pipe was being transported with a crane operated by Defendant Marcus Thomas when it fell on Mr. Ray. Defendant Thomas was an employee of Albemarle at the time of Mr. Ray's injury. Mr. Ray has received workers' compensation benefits as a result of the injuries he sustained on September 29, 2006. Mr. Ray was hired by Shaw[1] on August 21, 2006. Mr. Ray, as a condition of allowing him to perform work on

---

[1] The Court notes that there is a question of fact as to which Shaw entity was Mr. Ray's employer at the time of the injury. Plaintiffs claim Shaw L.L.C. was Mr. Ray's sole employer while Defendants claim that Shaw Constructors, Inc., Shaw Maintenance Inc., and Shaw L.L.C. are all subsidiaries of The Shaw Group, Inc., thus making The Shaw Group, Inc., Mr. Ray's employer. The Court will refer, throughout this opinion, to Mr. Ray's employer as "Shaw." This reference is merely an effort to simplify this opinion, and in no way indicates a determination by

Albemarle projects and property, signed a document titled "Employee's Remedy for Work Related Injuries" ("Waiver") when he was hired. This document reads:

> "Whereas, I <u>Jay Ray</u> (insert employees name), understand that Shaw Constructors, Inc. has entered a contract with Albemarle Corporation to perform certain construction and maintenance services for Albemarle Corporation. I have been advised that Albemarle Corporation in its contract with Shaw Constructors, Inc. requires my agreement to the terms of this document as a condition for allowing me access to perform work on Albemarle projects, property, or rights of way. Also, I am aware that the state Workers' Compensation statutes provide a remedy for work related injuries.
> Therefore, in recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of those statutes which may result from suits against customers or clients of Shaw Constructors, Inc. based on the same injury or injuries, and to the extent permitted by law, I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make any claims or to bring suit against any client or customer of Shaw Constructors Inc. for damages based upon injuries which are covered under such Workers' Compensation statutes. I further acknowledge that I am only being given the opportunity to work on a project for such client or customer upon condition that I execute this document.
> This document is not intended to limit any benefits afforded by the Workers' Compensation statutes nor is it intended to prevent or discourage me from filing a Workers' Compensation claim for any work related injury covered by such statutes."

(Employee's Remedy for Work Related Injuries, Doc. 19-2).

In their Complaint, Plaintiffs claim that Defendants Albemarle and Thomas were negligent, and this negligence caused Mr. Ray's injury on September 29, 2006. Plaintiffs also claim this negligence resulted in a loss of consortium for Mrs. Ray. Defendants respond with the affirmative defense that the Waiver is a complete bar to all of Plaintiffs' claims. Defendants have made a joint motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established under Rule 56(c) of the Federal Rules of Civil Procedure. A summary judgment motion should be granted "if the pleadings,

---

the Court as to who Mr. Ray's employer was at the time of the injuries.

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct 2505, 91 L.Ed. 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999). The moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party meets this burden, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson*, 477 U.S. at 249. To avoid summary judgment the non-movant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit," or by "depositions, answers to interrogatories, and admissions on file," and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

DISCUSSION

Defendants, in their Joint Motion for Summary Judgment ("Joint Motion"), assert that Plaintiffs are both barred from bringing this negligence action against Defendants Albemarle and Thomas. This assertion is based on the fact that Mr. Ray signed the Waiver. Defendants argue the Waiver released Defendants' liability for any negligence regarding the injuries Mr. Ray sustained on September 29, 2006. Plaintiffs respond by claiming that Arkansas law forbids enforcement of

the Waiver, that the Waiver was not voluntary, and that precedent cited by Defendants cannot be applied here. However, Plaintiffs plead that even if the Waiver is enforceable it does not apply to Defendants or the damages Plaintiffs are claiming in this action. This position is based on Plaintiffs' arguments that the Waiver requires Defendants to be clients or customers of Shaw Constructors, Inc., and the damages claimed by Plaintiffs must be covered by workers' compensation benefits. Thus, if these two requirements are not met, the Waiver does not apply to Plaintiffs' claims. Considering the facts in a light most favorable to the Plaintiffs, the Court makes the following findings.

As an initial matter the Court notes that the parties agree that Mrs. Ray's claim for loss of consortium is derivative of Mr. Ray's negligence claim. Therefore, if Mr. Ray's claim fails, Mrs. Ray's claim must also fail as a matter of law. *Hisaw v. State Farm Mut. Auto Ins. Co.,* 353 Ark. 668, 685, 122 S.W.3d 1, 10 (2003).

I. Exculpatory Contracts in Arkansas

The Arkansas Supreme Court defines an exculpatory clause as one in which a party seeks to absolve itself of the consequences of negligence it may commit.[2] *Finagin v. Arkansas Development Finance Authority*, 355 Ark. 440, 455, 139 S.W.3d 797 (2003) (citing *National Union Fire Ins. Co. v. Guardtronic, Inc.,* 76 Ark. App. 313, 64 S.W.3d 779 (2002)). There is a strong public policy in Arkansas to encourage the exercise of care, which results in a disfavor of exculpatory contracts. *Plant v. Wilbur*, 345 Ark. 487, 493, 47 S.W.3d 889 (2001); *Farmers Bank v. Perry,* 301 Ark. 547, 550, 787 S.W.2d 645 (1990). However, the Arkansas Supreme Court has never ruled exculpatory contracts invalid per se. *Plant*, 345 Ark. at 493. Instead, there are two rules of construction the

---

[2] In their Joint Motion, Defendants admit that the Waiver is properly described as an exculpatory contract. (Doc. 21).

Arkansas Supreme Court has applied to exculpatory contracts. *Jordan v. Diamond Equipment & Supply Co.,* 362 Ark. 142, 149, 207 S.W.3d 525 (2005). First, the contract is to be strictly construed against the party relying on it. *Id.* Second, it is not impossible to avoid liability through contract, but in order to do so the negligent liability to be avoided must be clearly set out in the contract. *Jordan,* 362 Ark. at 149*; Plant*, 345 Ark. at 493; *Edgin v. Entergy Operations, Inc.* 331 Ark. 162, 961 S.W.2d 724 (1998); *Farmers Bank,* 301 Ark. at 550-551. In addition, the court may also consider the totality of the facts and circumstances surrounding the execution of the exculpatory contract in order to determine the intent of the parties. *Jordan,* 362 Ark. at 149 (citing *Finagin,* 355 Ark. at 455). In *Finagin,* the court set out three factors to use in considering the facts and circumstances surrounding the execution of an exculpatory clause.  An exculpatory contract is enforceable when: 1) the party is knowledgeable of the potential liability that it releases; 2) the party is benefitting from the activity which may lead to the potential liability that is released; and 3) the contract that contains the clause was entered into fairly. ("Finagin factors") *Finagin,* 355 Ark. at 458.

  Defendants argue that the Waiver here is not only enforceable under these rules, but that an identical  exculpatory clause has previously been enforced by the Arkansas Supreme Court in *Edgin v. Entergy Operations, Inc.* 331 Ark. 162 (1998). Plaintiffs assert that the Waiver is void under Arkansas law  and that *Edgin* should not be applied here. Instead, Plaintiffs contend that the proper precedent is *Standard Pipe Line Co. v. Burnett.* 188 Ark. 491, 66 S.W.2d 637 (1933). The Court considers each of the parties arguments in turn.

  <u>A) Arkansas Code § 11-9-410</u>

  Plaintiffs first support their contention that the Waiver is void under Arkansas law with Arkansas Code section 11-9-410. This section states in pertinent part:

5

> "The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury."

Ark. Code Ann. § 11-9-410(a)(1)(A). Plaintiffs present to the Court a statutory interpretation argument, asserting that this section plainly states that one may not be limited from commencing an action against a third party because they have made a claim for workers compensation benefits. The Court agrees with Plaintiffs' interpretation. However, this section has no bearing on the issue before this Court. Defendants have not argued Plaintiffs' claims are barred because they have made a workers' compensation claim. Instead, Defendants assert that Plaintiffs' claims are barred by the Waiver signed by Mr. Ray. Therefore, the Court finds that there are no issues of material facts to be determined as to this argument; thus, it must fail as a matter of law.

### B) Arkansas Constitution

Plaintiffs' second basis for their argument that the Waiver is void under the laws of Arkansas is the Arkansas Constitution. Article V, section 32 states:

> "The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted."

Ark. Const. art. V, § 32. ("section 32"). Plaintiffs claim that this section of the Arkansas Constitution renders the Waiver unconstitutional because section 32 prevents the General Assembly, as well as private corporations, from limiting the amount Plaintiffs may recover for their injuries. *Standard Pipe Line Co. Inc., v. Burnett,* 188 Ark. 491, 66 S.W.2d 637, 641 (1933) (explaining that the settled

policy of Arkansas, to not allow any limitation on recovery, is supported by the Arkansas Constitution in section 32). The *Standard Pipe* court reasoned that a private corporation owes its existence to the General Assembly and operates under the legal restrictions imposed on it by the General Assembly. Thus, a corporation can have no power to limit recovery when the General Assembly itself does not have such power. This Court cannot apply the reasoning of *Standard Pipe* to the situation before it.

Plaintiffs have failed to recognize that *Standard Pipe* was written prior to the Arkansas legislature enacting workers' compensation laws. At the time *Standard Pipe* was written section 32 read:

> "No act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property; and in case of death from such injuries the right of action shall survive and the General Assembly shall prescribe for whose benefit such action shall be prosecuted."

Ark. Const. article V, § 32, *repealed by* Ark. Const. amend. 26. In 1938, section 32 was modified by amendment 26. *See Young v. Tarlton, Contractor*, 204 Ark. 283, 162 S.W.2d 477 (1942) (explaining that section 32 was modified by Arkansas Constitutional amendment 26, adopted in 1938, to permit the legislature to enact workers' compensation laws). The purpose of this amendment was to empower the General Assembly with the ability to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees. *Huffstettler v. Lion Oil Co.,* 208 F.2d 549, 554-555 (1953). While the reasoning applied in *Standard Pipe* was logical when the General Assembly was not empowered with the right to limit recovery of employees from employers, that is no longer the case. After amendment 26, the General Assembly does have

the power to limit recovery of employees from employers through workers' compensation laws.[3] Therefore, the reasoning of the *Standard Pipe* court as to why corporations cannot limit recovery through contract does not apply here.[4]

The Court recognizes that amendment 26 did not empower the Arkansas legislature with the right to limit recovery without an employee-employer relationship. *Baldwin Co. v. Maner*, 224 Ark. 348, 350, 273 S.W.2d 28 (1954). However, here there is no statute at issue that is limiting the recovery of Plaintiffs. Instead, it is a contract between private parties which seeks to limit liability for negligence. As previously noted, such contracts are not per se invalid under the laws of Arkansas. For these reasons, the Court finds that article V, section 32 of the Arkansas Constitution, as modified by amendment 26, does not apply to the issues before this Court. Therefore, even taking all the facts in the light most favorable to Plaintiffs, the constitutional argument must fail as a matter of law.

C) *Standard Pipe*

Plaintiffs rely heavily on *Standard Pipe* in their claim that the Waiver is void under Arkansas law. Plaintiffs support this contention by arguing that: 1) the facts here are similar to those presented in *Standard Pipe*; 2) following *Standard Pipe* would render the Waiver here unconstitutional and against Arkansas public policy;[5] and 3) the Waiver here must fail because it is not voluntary as

---

[3] The Court notes that the issue before it is not whether an employer may limit recovery. However, the Court must analyze the argument presented to it by Plaintiffs and in the *Standard Pipe* case it was the plaintiff's employer (a corporation) who was attempting to limit recovery through contract.

[4] The Court will discuss Plaintiffs' remaining arguments regarding *Standard Pipe* in the following section.

[5] As the Court has already analyzed and dispensed with the constitutional argument in the previous section it will not repeat that analysis in this section.

prescribed by *Standard Pipe*. The Court addresses each of these arguments making any factual inferences in favor of Plaintiffs.

In *Standard Pipe*, a Louisiana corporation employed the plaintiff, a resident of Arkansas, to do work for them in Arkansas. Before the plaintiff began work, he signed a document with the following language:

> "it is agreed that should the employee, while in the service of the employer, receive an injury or injuries, compensation therefor shall only be claimed by the employee, and recognized and paid by the employer, in the same amount and in the same manner as is now fixed and determined by the Workmen's Compensation Law of the State of Louisiana."

*Standard Pipe,* 66 S.W.2d at 640. Plaintiff was injured on the job and sued the employer under Arkansas law. The employer defended that the plaintiff was bound by the contract he signed and his only remedy was compensation under the Workmen's Compensation Act of the State of Louisiana. *Id.* at 638. The *Standard Pipe* court held that the contract signed by the plaintiff was not voluntary because it did not give him the choice between the Workmen's Compensation Act of Louisiana and the laws of Arkansas.[6] *Id.* The court held the practical interpretation of this contract is "no contract, no job." *Id.* at 641. The court recognized that the plaintiff's rights to recover were not completely prevented, but they were seriously limited. This limitation was in the form of being forced to resort to a foreign jurisdiction where the laws regarding recovery were, in that court's view, insufficient. *Id.* Lastly, the *Standard Pipe* court held that the contract was a "shift to evade the laws of [Arkansas], and in conflict with public policy." *Id.* at 642.

The Court finds the facts of *Standard Pipe* distinguishable from the case before it. In

---

[6] The Court notes that Arkansas had not yet enacted workers' compensation laws in 1933 at the time *Standard Pipe* was decided. *See Young v. Tarlton, Contractor*, 204 Ark. 283, 162 S.W.2d 477 (1942)

*Standard Pipe,* the plaintiff signed a contract that limited his employer's negligence liability to the laws of a foreign jurisdiction. *Id.* at 640. The contract attempted to avoid Arkansas law entirely. Here, Mr. Ray signed a contract that purported to limit his remedies, not against his employer, but instead against any "clients or customers" of Shaw Constructors, Inc. (Employee's Remedy for Work Related Injuries, Doc. 19-2). Additionally, Mr. Ray's Arkansas workers' compensation benefits were not limited by the Waiver. The Waiver in no way attempts to evade the jurisdiction of Arkansas or its workers' compensation laws. Finally, at the time of *Standard Pipe* there was not yet a Workers' Compensation Act in Arkansas. Thus, the only course of remedy under Arkansas law was the plaintiff's right to bring a negligent suit against his employer. This fact seemed to significantly influence the Arkansas Supreme Court's decision in *Standard Pipe*. 66 S.W.2d at 641-642. Because of these differences, the Court finds that the relevant facts, laws, and public policies in Arkansas at the time of *Standard Pipe* differ significantly from those before this Court. In addition, the Court finds that the caselaw developed since *Standard Pipe* is a more accurate reflection of the Arkansas Supreme Court's current stance on exculpatory contracts.[7] For this reason, as well as the distinguishable facts of *Standard Pipe*, the Court finds *Standard Pipe* is not applicable to the issues before it.

    D) *Edgin*

Finally, Plaintiffs assert that Defendants are misplaced in their reliance on *Edgin*. Plaintiffs argue that because the issue of constitutionality of the contract was not raised and addressed in *Edgin*

---

[7] *Jordan v. Diamond Equipment & Supply Co.,* 362 Ark. 142, 149, 207 S.W.3d 525 (2005); *Finagin v. Arkansas Development Finance Authority*, 355 Ark. 440, 455, 139 S.W.3d 797 (2003); *Plant v. Wilbur*, 345 Ark. 487, 493, 47 S.W.3d 889 (2001); *Edgin v. Entergy Operations, Inc.* 331 Ark. 162, 961 S.W.2d 724 (1998).

then it can not be applied here. Instead, as discussed above, Plaintiffs argue *Standard Pipe* should be applied.

In *Edgin*, the plaintiff was employed by Wackenhut Corporation ("Wackenhut") as a security guard. Wackenhut contracted with defendant Entergy Operations, Inc. ("Entergy") to provide security at its nuclear plant. *Edgin,* 331 Ark. at 164. Wackenhut assigned the plaintiff to work security at Entergy's nuclear plant. While performing her duties for Wakenhut at Entergy's plant, the plaintiff was injured and sued Entergy for negligence which she claimed caused her injury. *Id.* at 165. Entergy filed a summary judgment motion claiming that the plaintiff was an employee of Wackenhut at the time the injury occurred, that the plaintiff had already received workers' compensation benefits for her injuries, and that the plaintiff's claims against Entergy were barred by the contract she signed in consideration of her employment with Wackenhut. *Id.* The contract plaintiff signed when she was hired by Wakenhut contained the following language:

> "in recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of such state statutes which may result from suits against the customers or clients or Wackenhut based on the same injury or injuries, and to the extent permitted by law, *I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE* to make claims or bring suit against any client or customer of Wackenhut for damages based upon injuries which are covered under such Workers' Compensation statutes."

*Id* at 166 (emphasis in original).

The Arkansas Supreme Court held that this contract was valid and enforceable. The plaintiff, under the terms of this contract, was precluded from brining suit against Entergy based on injuries which she already received recovery under workers' compensation statutes. *Id.* at 169. The *Edgin* court stated that an employer may not, through a contract in advance, absolve itself from liability for injuries suffered by employees as a result of employer's negligence. *Id.* at 167. However, the court

11

held that the contract was not limiting employer liability in advance. Instead, the contract provided that "in exchange for employment, the employee relinquishes any additional claims for work-related injuries, which are covered by workers' compensation benefits, against the employers's clients or customers." *Id.* The court concluded that the contract was not void per se as against public policy. *Id.* However, the contract still must be strictly construed against the maker, and the language of the contract must "clearly set out what negligent liability is to be avoided." *Id.*

Defendants assert that the language in the Waiver before this court and the language in the *Edgin* contract are identical, and should be treated the same. The Court finds that the contract language offered in *Edgin* is extremely similar to the second paragraph of the Waiver in this case. Furthermore, the facts in *Edgin* are also extremely similar to the case at bar. In *Edgin*, the relationship of the parties is similar to that of the parties before this Court. The plaintiff, in consideration of employment, signed a waiver. This waiver released the clients and customers of Wakenhut from liability. That is exactly the case here. Mr. Ray signed the Waiver releasing clients and customers of Shaw Constructors, Inc. from liability.[8] Mr. Ray was not employed by Albemarle, but was doing work on Albemarle property as an employee of Shaw. In addition, at least one of the exact issues raised here is addressed by the *Edgin* court.[9] For these reasons, the Court finds the *Edgin* case to be applicable to the case before it.

Plaintiffs argue that because the same issues were not raised and addressed in *Edgin* that this Court should not rely on it in analyzing Defendants' Joint Motion. The Court disagrees. The issue

---

[8] Whether Mr. Ray signing the Waiver was a condition of his employment with Shaw is addressed later in this opinion.

[9] Whether the Waiver clearly states the negligence liability to be avoided.

that Plaintiffs are referring to is their argument that the Waiver is unconstitutional. Plaintiffs assert that the *Standard* case was the last case to address this issue, and thus should be applied here instead of *Edgin*. As the Court has already analyzed and dispensed with the constitutional argument and the applicability of *Standard*, there is no reason why *Edgin* should not be applied to the remaining issues.

In sum, the Court finds that Arkansas does recognize exculpatory contracts and that they are not invalid per se as against public policy. *Plant,* 345 Ark. 493. For the reasons stated above, Arkansas Code section 11-9-410 is not applicable to the issues before this Court, nor is article V, section 32 of the Arkansas Constitution. *Standard Pipe* is distinguishable from the case at bar, therefore it will not be applied here. Instead, *Edgin* along with the caselaw that has developed since *Edgin* was issued are the most applicable precedent for these issues and will be applied here.

II. Enforcing the Waiver

    A) *Edgin* Standard

Now that the Court has determined that the Waiver is not void under the laws of Arkansas and that *Edgin* is applicable to this situation, the first issue becomes whether the Waiver meets the *Edgin* standard. The Waiver must be strictly construed against the party attempting to enforce it and must clearly state the negligence for which liability is to be avoided. *Edgin*, 331 Ark. at 168. Plaintiffs contend that the Waiver does not clearly state the negligence for which liability is to be avoided. Defendants respond by pointing out that the same argument was made in *Edgin* and was unsuccessful. The *Edgin* court held that the contract was clear and unambiguous in that "it only released the clients of Wackenhut from liability for work-related injuries sustained by a Wackenhut employee that is covered by the workers' compensation statutes." *Id.* The court went on to state that

by signing the contract the employee was not "forfeiting his or her right to receive *any* compensation for work-related injuries; rather the employee is merely agreeing to waive an *additional* remedy against a client of Wackenhut in exchange for employment with Wackenhut. *Id* (emphasis in original). Because the language of the Waiver here is extremely similar to the language of the contract in *Edgin*, the Court agrees with the Defendants.

The Waiver here clearly states that it only releases the clients or customers of Shaw Constructors, Inc. from liability on damages based upon injuries sustained by Mr. Ray that are covered by the workers' compensation statutes. The Waiver is not an attempt to release Mr. Ray's rights to receive any compensation for work-related injuries. Instead, it only releases the right to a remedy in addition to workers' compensation benefits against a client or customer of Shaw Constructors, Inc. The Plaintiffs have not met their burden to produce evidence to create an issue of material fact in the face of the plain language of the Waiver offered by Defendants. Therefore, the Court holds that the Waiver clearly identifies the negligence for which liability is being avoided.

B) *Finagin* Factors

For the Waiver to be enforceable the Court must take a "total transaction" approach instead of simply reviewing the literal language of the Waiver, *Plant,* 345 Ark. at 494. In taking the total transaction approach, the Court must test whether the Waiver meets the three *Finagin* factors.[10] *Jordan,* 362 Ark. at 150-151. An exculpatory clause may be enforced when: 1) the party is

---

[10] While *Edgin* is the most factually similar precedent available to the Court in analyzing the issues before it, the Court is also bound by the laws regarding exculpatory contracts that the Arkansas Supreme Court has developed in the years since *Edgin* was decided. This includes the addition, in 2003, requiring the execution of an exculpatory document to satisfy the *Finagin* factors before it can be enforced. *See Finagin v. Arkansas Development Finance Authority,* 355 Ark. 440, 139 S.W.3d 797 (2003); *Jordan* v. *Diamond Equipment & Supply Co.,* 362 Ark. 142, 207 S.W.3d 525 (2005).

knowledgeable of the potential liability that is released; 2) the party is benefitting from the activity which may lead to the potential liability that is released; and 3) the contract that contains the clause was fairly entered into. *Finagin,* 355 Ark. at 458. Defendants claim all three *Finagin* factors are met by asserting that: 1) Mr. Ray was knowledgeable of the potential liability he was releasing because the Waiver clearly identifies it, and Mr. Ray previously worked for Shaw which made him aware of the risk involved in the job; 2) Mr. Ray stood to benefit from his employment with Shaw; and 3) Mr. Ray has failed to allege he signed the Waiver involuntarily.[11] The Court must consider the totality of the circumstance surrounding the execution of the Waiver in determining whether the *Finagin* factors have been satisfied. *Jordan,* 142 Ark. at 151-152.

In reviewing the requirements enumerated in the *Finagin* factors, the Court finds that there are genuine issues of material fact as to whether Mr. Ray benefitted from signing the Waiver. In order for the Waiver to be enforceable, Mr. Ray must have received some benefit from entering into it. *Jordan,* 142 Ark. at 151-152. Defendants claim in their Joint Motion that Mr. Ray stood to benefit through his employment with Shaw. (Doc. 21). This is the only statement offered by Defendants regarding the second *Finagin* factor, and there is no evidence in the record regarding this statement. However, Defendants allege in their Reply to Plaintiffs' Response to Defendants' Joint Motion that if Mr. Ray had refused to sign the Waiver, he still would have been free to work for Shaw, just not on Albemarle property. (Doc. 27). These two statements seem to be in conflict with one another. If Mr. Ray's claimed benefit was his employment with Shaw, but Mr. Ray could have obtained employment with Shaw without signing the Waiver, then the Court is unclear as to whether

---

[11] The Court notes that Plaintiffs, in their Response, allege that Mr. Ray signed the Waiver involuntarily according to the *Standard Pipe* standard.

employment with Shaw was an actual benefit of signing the Waiver. Due to the lack of evidence in the record regarding whether or not Mr. Ray would have still been hired by Shaw had he not signed the Waiver, along with Defendants conflicting allegations, the Court finds that the Defendants have not met their burden in proving there are no issues of material fact as to whether or not Mr. Ray benefitted from signing the Waiver. In addition, the Court has not been offered evidence regarding whether the Waiver was entered into fairly, the third *Finagin* factor. Therefore, Defendants' Joint Motion must be denied.

Because there are genuine issues of material fact as to at least two of the three *Finagin* factors, the Court is unable to determine whether the Waiver is enforceable. For this reason, the Court will not address any of the interpretation issues presented by the parties, as it would be premature at this time.[12]

## CONCLUSION

For reasons discussed herein and above, the Court finds that Defendants' Joint Motion for Summary Judgment should be and hereby is DENIED. An order of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, on this 14th day of January, 2009.

    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

---

[12] The Court will not address at this point Plaintiffs' assertions that the waiver requires Defendants to be clients or customers of Shaw Constructors, Inc. and they are not, and the waiver requires the damages claimed by Plaintiffs to be covered by workers' compensation benefits and they are not.

16