IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ROBERT J. RAY and
AMELIA RAY PLAINTIFFS

VS. CASE NO. 07-CV-1076

ALBEMARLE CORPORATION
and MARCUS THOMAS DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is Defendants' Third Joint Motion for Summary Judgment. (Doc. 51). Plaintiffs responded. (Doc. 54). Defendants replied. (Doc. 58). The Court finds this matter ripe for consideration.

BACKGROUND

The parties agree to the following facts. Plaintiff Robert J. Ray was hired by Shaw[1] on August 21, 2006. Mr. Ray was working on the premises of Separate Defendant Albemarle Corporation ("Albemarle") on September 29, 2006. On this day, Mr. Ray sustained injuries to his left leg when a pipe fell on him. Separate Defendant Thomas was operating the crane transporting this pipe when it fell on and injured Mr. Ray. Defendant Thomas was an employee of Albemarle at the time of Mr. Ray's injury. Mr. Ray received workers' compensation benefits as a result of the

[1] The Court notes that there is a question of fact as to which Shaw entity employed Mr. Ray at the time of the injury. Plaintiffs claim Shaw L.L.C. was Mr. Ray's sole employer while Defendants claim that Shaw Constructors, Inc., Shaw Maintenance Inc., and Shaw L.L.C. are all subsidiaries of The Shaw Group, Inc., thus making The Shaw Group, Inc., Mr. Ray's employer. The Court will refer, throughout this opinion, to Mr. Ray's employer as "Shaw." This reference is merely an effort to simplify this opinion, and does not indicate a determination by the Court as to who Mr. Ray's employer was at the time of the injuries.

injuries he sustained on September 29, 2006. As a condition of allowing Mr. Ray access to Albemarle property, he signed a document titled "Employee's Remedy for Work Related Injuries" ("Waiver") when he was hired. This document reads:

> "Whereas, I Jay Ray (insert employees name), understand that Shaw Constructors, Inc. has entered a contract with Albemarle Corporation to perform certain construction and maintenance services for Albemarle Corporation. I have been advised that Albemarle Corporation in its contract with Shaw Constructors, Inc. requires my agreement to the terms of this document as a condition for allowing me access to perform work on Albemarle projects, property, or rights of way. Also, I am aware that the state Workers' Compensation statutes provide a remedy for work related injuries.
>
> Therefore, in recognition of the fact that any work related injuries which might be sustained by me are covered by state Workers' Compensation statutes, and to avoid the circumvention of those statutes which may result from suits against customers or clients of Shaw Constructors, Inc. based on the same injury or injuries, and to the extent permitted by law, I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make any claims or to bring suit against any client or customer of Shaw Constructors, Inc. for damages based upon injuries which are covered under such Workers' Compensation statutes. I further acknowledge that I am only being given the opportunity to work on a project for such client or customer upon condition that I execute this document.
>
> This document is not intended to limit any benefits afforded by the Workers' Compensation statutes nor is it intended to prevent or discourage me from filing a Workers' Compensation claim for any work related injury covered by such statutes."

(Employee's Remedy for Work Related Injuries, Doc. 19-2).

In their Complaint, Plaintiffs claim that Defendants Albemarle and Thomas were negligent and that this negligence caused Mr. Ray's injury on September 29, 2006. Plaintiffs also claim this negligence resulted in a loss of consortium for Mrs. Ray. Defendants respond with the affirmative defense that the Waiver is a complete bar to all of Plaintiffs' claims. Defendants have made their third joint motion for summary judgment.

The Court, by memorandum opinion and order dated January 14, 2009, analyzed and then denied Defendants' first joint motion for summary judgment. (Doc. 33 & 34). In this opinion, the Court made rulings regarding the law applicable to the issues in this case. Because the third joint

motion for summary judgment deals with the exact law as the first joint motion for summary judgment, the Court will not repeat the analysis in this opinion. Instead it incorporates its previous findings of law into this opinion.[2] The Court is also unconvinced by the Plaintiffs' attempt to have it reconsider its application of the law.[3]

SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established under Rule 56(c) of the Federal Rules of Civil Procedure. A summary judgment motion should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct 2505, 91 L.Ed. 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable factual inferences. *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999). The

---

[2] The Court held that: 1) Mrs. Ray's claim for loss of consortium is derivative of Mr. Ray's negligence claim; therefore, if Mr. Ray's claim fails, Mrs. Ray's claim must also fail as a matter of law. *Hisaw v. State Farm Mut. Auto Ins. Co.,* 353 Ark. 668, 685, 122 S.W.3d 1, 10 (2003); 2) *Standard Pipe Line Co. v. Burnett,* 188 Ark. 491, 66 S.W.2d 637 (1933) is distinguishable from this case, and the more recent Arkansas cases regarding exculpatory contracts are more applicable to this situation; 3) Arkansas Code Annotated section 11-9-410(a)(1)(A) has no bearing on the issues before the Court; 4) article V, section 32 of the Arkansas Constitution, as modified by amendment 26, does not apply to the issues before the Court; and 5) *Edgin v. Entergy Operations, Inc.,* 331 Ark. 162, 961 S.W.2d 724 (1998) is applicable to this case, and the Waiver meets the standard set forth in *Edgin.*

[3] Plaintiffs continue to heavily rely on *Standard Pipe* in their response to Defendants' third motion for summary judgment even though the Court previously ruled that it finds the case distinguishable from the present case. Additionally, the Court considered the Arkansas case referenced in footnote three of Plaintiffs' response but did not find that it indicated that the Court erred in its original finding regarding article V, section 32 of the Arkansas Constitution. *See Johnson v. Rockwell Automation, Inc.,* 2009 Ark. 241, __ S.W.3d. __ (2009).

moving party bears the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party meets this burden, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson*, 477 U.S. at 249. To avoid summary judgment the non-movant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit," or by "depositions, answers to interrogatories, and admissions on file," and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

DISCUSSION

I. Exculpatory Contracts in Arkansas

The Arkansas Supreme Court defines an exculpatory clause as one in which a party seeks to absolve itself of the consequences of negligence it may commit.[4] *Finagin v. Arkansas Development Finance Authority*, 355 Ark. 440, 455, 139 S.W.3d 797 (2003) (citing *National Union Fire Ins. Co. v. Guardtronic, Inc.,* 76 Ark. App. 313, 64 S.W.3d 779 (2002)). There is a strong public policy in Arkansas to encourage the exercise of care, which results in a disfavor of exculpatory contracts. *Plant v. Wilbur*, 345 Ark. 487, 493, 47 S.W.3d 889 (2001); *Farmers Bank v. Perry,* 301 Ark. 547, 550, 787 S.W.2d 645 (1990). However, the Arkansas Supreme Court has never ruled exculpatory contracts invalid per se. *Plant*, 345 Ark. at 493. Instead, there are two rules of construction the

[4] In their first joint motion, Defendants admit that the Waiver is properly described as an exculpatory contract. (Doc. 21).

Arkansas Supreme Court has applied to exculpatory contracts. *Jordan v. Diamond Equipment & Supply Co.,* 362 Ark. 142, 149, 207 S.W.3d 525 (2005). First, the contract is to be strictly construed against the party relying on it. *Id.* Second, it is not impossible to avoid liability through contract, but in order to do so the negligent liability to be avoided must be clearly set out in the contract. *Jordan,* 362 Ark. at 149*; Plant*, 345 Ark. at 493; *Edgin,* 331 Ark. at 168; *Farmers Bank,* 301 Ark. at 550-551. In addition, the court should also consider the totality of the facts and circumstances surrounding the execution of the exculpatory contract in order to determine the intent of the parties. *Jordan,* 362 Ark. at 149 (citing *Finagin,* 355 Ark. at 455). In *Finagin,* the court set out three factors to use in considering the facts and circumstances surrounding the execution of an exculpatory clause. An exculpatory contract is enforceable when: 1) the party is knowledgeable of the potential liability that it releases; 2) the party is benefitting from the activity which may lead to the potential liability that is released; and 3) the contract that contains the clause was entered into fairly. ("Finagin factors") *Finagin,* 355 Ark. at 458.

II. Enforceability of the Waiver

In the Court's previous memorandum opinion and order, dated January 14, 2009, the Court ruled that Defendants had not met their burden in proving that there were no genuine issues of material facts as to the second and third *Finagin* factors. (Doc. 33 & 34). Therefore, the Court denied Defendants' first joint motion for summary judgment. Defendants filed their third motion for summary judgment in an attempt to provide the Court with evidence to show there are no issues of material facts regarding all three of the *Finagin* factors.[5] *Id.* Plaintiffs argue that Defendants offered

[5] Because the Court held there were no genuine issues of material facts regarding the second and third factors it did not address the first factor in its previous order. However, it will do so here.

no new evidence to add to the record; therefore, there are still genuine issues of material facts regarding the second and third *Finagin* factors.

For the Waiver to be enforceable the Court must take a "total transaction" approach instead of simply reviewing the literal language of the Waiver.[6] *Plant,* 345 Ark. at 494. In taking the total transaction approach, the Court must test whether the Waiver meets the three *Finagin* factors.[7] *Jordan,* 362 Ark. at 150-151. Defendants claim all three *Finagin* factors are met by asserting that: 1) Mr. Ray was knowledgeable of the potential liability he was releasing because he is charged with knowing the contents of the documents he signs, he was familiar with Albemarle's operations involving cranes, and he was a certified crane operator; 2) Mr. Ray benefitted from signing the waiver because it allowed him access to work on Albemarle's property; and 3) the waiver was fairly entered into because it was set forth in a separate document, the exculpatory language was conspicuous, the Waiver references Albemarle specifically, and there is no allegation of fraud, duress, undue influence, lack of capacity, mistake, or inequitable conduct. The Court must consider the totality of the circumstance surrounding the execution of the Waiver in determining whether the *Finagin* factors have been satisfied. *Jordan,* 142 Ark. at 151-152.

The first *Finagin* factor requires that Mr. Ray had knowledge of the potential liability he was releasing. *Finagin,* 355 Ark. at 458. Mr. Ray claims that he does not remember signing the Waiver

---

[6] Because the Court has already determined that the Waiver satisfies the *Edgin* standard in its first opinion, (Doc. 33), it will not repeat that analysis here. *Edgin,* 331 Ark. at 961.

[7] While *Edgin* is the most factually similar precedent available to the Court in analyzing the issues before it, the Court is also bound by the laws regarding exculpatory contracts that developed in the years since *Edgin* was decided. This includes requiring the execution of an exculpatory document to satisfy the *Finagin* factors. *See Finagin v. Arkansas Development Finance Authority,* 355 Ark. 440, 139 S.W.3d 797 (2003); *Jordan* v. *Diamond Equipment & Supply Co.,* 362 Ark. 142, 207 S.W.3d 525 (2005).

and that "[no] person ever told me before I was permanently injured that if Albemarle injured me that I could not hold them legally accountable." (Ray Affidavit Doc. 56-1). It is well established by Arkansas law that a party is bound under the law to know the contents of the documents he signs and cannot excuse himself from those contents by alleging he did know what the documents contained. *Carmichael v. Nationwide Life Ins. Co.,* 305 Ark. 549, 551, 810 S.W.2d 39, 41 (1991); *Pittsburgh Steel Co. v. Wood,* 109 Ark. 537, 160 S.W. 519, 520 (1913). Therefore, the Court charges Mr. Ray with the knowledge of the clear language of the Waiver which stated: "I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make any claims or to bring suit against any client or customer of Shaw Constructors, Inc. for damages based upon injuries which are covered under such Workers' Compensation statutes." (Employee's Remedy for Work Related Injuries, Doc. 19-2)(emphasis in original). Albemarle is also mentioned by name in the Waiver. The Court finds that Defendants have met their burden of showing there is no genuine issue of material fact regarding Mr. Ray's knowledge of the potential liability he was releasing by signing the waiver.

The burden then shifts to Plaintiffs to present affirmative evidence and specific facts showing that there is a genuine dispute on the issue. *Anderson,* 477 U.S. at 249. Mr. Ray's statements that he does not remember signing the Waiver and that no one explained its implications to him does not create a genuine issue of material fact. Ultimately Mr. Ray is charged with knowing the contents of the document he signed. *Jordan,* 362 Ark. at 152; *Charmichael,* 305 Ark. at 549. The Waiver language is very clear in stating that by signing it one is giving up the right to make claims or bring suit against Albemarle for injuries covered by workers compensation. However, in his affidavit Mr. Ray states that he is a welder and crane operator and does not, nor did he ever, understand the unfamiliar language of the Waiver. The Court is now unclear as to whether Mr. Ray did not

remember signing the Waiver or whether he did not understand the language of it. Regardless, Mr. Ray is bound to know the contents of the documents he signs. *Carmichael,* 305 Ark. 549. The Waiver clearly stated that it was a waiver and release of all rights to sue Albemarle for injuries covered by workers compensation, and Mr. Ray is charged with this knowledge.

Mr. Ray also asserts that he was not aware of the potential liability he was releasing because he has never witnessed an accident involving a crane, and he believes that if a crane is operated in a manner complying with common safety practices they are not inherently dangerous. Mr. Ray's belief that properly operated cranes are not inherently dangerous does not affect his knowledge of the potential liability he was releasing by signing the waiver. The belief that properly operated cranes are not inherently dangerous does not establish that Mr. Ray did not know that improperly operated cranes might produce potential liability. The Waiver released all potential liability; not just liability that arose from properly operated cranes. Regardless if cranes are inherently dangerous or not, the Arkansas Supreme Court has upheld exculpatory contracts in situations where the activity that caused the injury was not inherently dangerous. *See Jordan,* 362 Ark 142; *see also Edgin* 331 Ark. 162. Additionally, the Waiver released all liability, not just that which arose from an injury working around a crane. The Court finds that Plaintiffs have not presented facts to establish any genuine issue of material fact as to whether Mr. Ray had knowledge of the potential liability he was releasing by signing the waiver. The first *Finagin* factor is satisfied.

Second, Defendants must show that Mr. Ray stood to benefit from signing the Waiver. *Finagin,* 355 Ark. at 458. Defendants contend that the benefit Mr. Ray received from signing the Waiver was permission to work on Albemarle's projects, property, and rights of way. Defendants support this contention with Mr. Ray's statement, in his deposition, that he wanted to go back to

work for Shaw at Albemarle because it was just as close to his home and paid more money than his previous job. (Ray Dep. Doc. 19-1). Plaintiffs argue that Defendants have not offered any new evidence to the record; therefore, the Court must find that there is still a genuine issue of material fact as to whether Mr. Ray benefitted from signing the Waiver. While the Plaintiffs are correct in their assertion that Defendants' did not produce any new evidence with this third motion for summary judgment, Defendants have brought to the Court's attention relevant evidence that was already part of the record.[8] The Court will reconsider the benefit factor in light of the evidence brought to the Court's attention. Defendants claim that access to Albemarle property is the benefit Mr. Ray received from signing the Waiver. Mr. Ray himself stated in his deposition that he wanted to go back to work on the Albemarle property, specifically, because it was the same distance from his home and paid higher wages than his previous job. This statement indicates to the Court that Mr. Ray was benefitting from access to Albemarle property by driving the same distance to work each day but with a higher salary than his previous job. Plaintiffs have offered nothing to contravene this statement made by Mr. Ray in his deposition. The Court finds that there is no issue of material fact regarding Mr. Ray's benefit from signing the Waiver. The second *Finagin* factor is satisfied.

Lastly, Defendants must show the Court that the Waiver was entered into fairly. *Finagin,* 355 Ark. at 458. The Court ruled in its first order that there was no evidence in the record regarding whether the Waiver was entered into fairly.[9] However, the Court has reconsidered this finding based

[8] The Defendants rely on Mr. Ray's deposition and while it was not attached to Defendants third motion for summary judgment it was already part of the record. (Doc. 19-1).

[9] The Court notes that the parties did not argue the third *Finagin* factor in the first joint motion for summary judgment, but now that they have the Court may analyze these arguments in its reconsideration of this factor.

on the parties arguments and the evidence pointed out by the Defendants in their third motion for summary judgment. Defendants assert that there is no evidence in the record to indicate that the Waiver was unfairly executed. The Waiver is a separate document and the exculpatory language is in all capital letters. The Waiver also specifically references waiving and releasing any right "to make claim or to bring suit against any client or customer of Shaw Constructors, Inc. . . .," and Albemarle is mentioned by name in the Waiver as having a business contract with Shaw Constructors, Inc. Finally, Mr. Ray has made no allegations of fraud, duress, undue influence, lack of capacity, mistake, or any inequitable conduct. Defendants have met their burden of showing there is no genuine issue of material fact in dispute regarding this factor. The burden now shifts to Plaintiffs to present affirmative evidence and specific facts showing that there is a genuine dispute on the issue. *Anderson,* 477 U.S. at 249.

Plaintiffs argue that the Waiver was entered into unfairly because no one explained to Mr. Ray that if he was injured he could not hold Albemarle legally accountable. As stated above Mr. Ray is charged with knowing the contents of the documents he signs. *Carmichael,* 305 Ark. 549. The Waiver clearly stated "I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make any claims or to bring suit" against a client or customer of Shaw Constructors Inc. for injuries covered by workers compensation. Albemarle is also listed by name as having a contract with Shaw Constructors Inc. The Court finds that the clear language of the Waiver was sufficient to inform Mr. Ray of the rights he was releasing. As stated above, the Court cannot accept Mr. Ray's ignorance of the contents of the Waiver as a reason not to enforce it. *Carmichael,* 305 Ark. 549

Plaintiff also argues that the Waiver is inherently unfair because there was unequal bargaining power. It is Plaintiffs's position that because the Waiver was required for the job at

Albemarle he had no real choice in signing it. Plaintiff relies on a statement in *Plant* in which the trial court explained that it was not going to find a waiver of liability in a dangerous recreational situation void as against public policy. 345 Ark. at 495. The trial court explained, and the Arkansas Supreme Court agreed, that it was not as if car racing was a life necessity like "making a living." *Id.* Plaintiffs construe *Plant* to represent that the Court should not enforce the Waiver because it concerns Mr. Ray's employment. However, in *Jordan* the Arkansas Supreme Court held that an exculpatory clause contained in a lease agreement was enforceable even though the equipment being leased was to be used for the purpose of landscaping which was the plaintiff's means for making a living. 362 Ark. at 151-2. The *Jordan* court did not find that the exculpatory contract at issue was inherently unfair simply because it had the potential to affect the plaintiff's job. *Id.* Instead, the court applied the total transaction approach and the three *Finagin* factors in holding that the exculpatory contract was enforceable. *Id.* Furthermore, in *Edgin* the plaintiff signed an exculpatory contract with very similar language as the Waiver here in order to work as a security guard on the property of a business owned by someone other than her employer. 331 Ark. at 166-7.[10] The *Edgin* court did not find that the exculpatory contract was inherently unfair or void against public policy simply because it affected the plaintiff's employment. *Id.* The Court finds that the Waiver is not inherently unfair or void against Arkansas public policy simply because it affects Mr. Ray's employment. Thus, there is no genuine issue of material fact regarding whether the Waiver was entered into fairly. The third *Finagin* factor is satisfied.

After considering all of the arguments made by the parties regarding the third summary

[10] The Court, in its previous memorandum brief on Defendants' first motion for summary judgment, provided the facts of *Edgin* and analogized *Edgin* to this case. (Doc. 33). The Court finds that the same analysis applies here.

judgment motion, the Court finds that there are no issues of material facts regarding the enforceability of the Waiver. Therefore, the Plaintiffs are bound by the Waiver Mr. Ray signed.

III. Interpretation of the Waiver

The Court must now address the interpretation issues it declined to address in its opinion on the first joint motion for summary judgment. The first rule of contract interpretation is to give the language of the contract the meaning that the parties intended. *Health Resources of Ark. Inc. v. Flener*, 374 Ark. 208, 2008 WL 4173646, *2 (Ark. Sept. 11, 2008). The intention of the parties should be gathered from the whole context of the agreement. *Id.* In interpreting a contract, a court must consider the words used in their plain and ordinary meaning. *Id.* "The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Id.* (quoting *Coleman v. Regions Bank,* 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005)). It is clear to the Court that the Waiver was intended to insulate Shaw Constructors, Inc.'s clients and customers from liability. In light of this intent the Court will analyze the interpretation issues raised by the Plaintiffs.

First, Plaintiffs claim that Defendants Albemarle and Thomas are not clients or customers of Shaw Constructors, Inc.; therefore, the Waiver does not apply to either of them. The Court finds that the plain language of the Waiver indicates that Albemarle is a client or customer of Shaw Constructors, Inc. The Waiver states: ". . . Shaw Constructors, Inc. has entered into a contract with Albemarle Corporation to perform certain construction and maintenance services for Albemarle Corporation." The term "client" is defined as "the party for which professional services are rendered, as by an attorney" or "a customer or patron." American Heritage College Dictionary 261

(3d ed. 1997). The term "customer" is defined as "one that buys goods or services" or "an individual with whom one must deal." American Heritage College Dictionary 341 (3d ed. 1997). The plain language of the Waiver states that Albemarle entered into a contract for Shaw Constructors, Inc. to perform construction and maintenance services. The Court finds that Albemarle clearly fits into the plain and ordinary meaning of the term customer as used in the Waiver.

The Court, however, cannot find that the Waiver applies to Defendant Thomas as a client or customer of Shaw Constructors, Inc. Defendants cite to the Court a definition of customer as "one that buys goods or services" or "an individual with whom one must deal." American Heritage College Dictionary 341 (3d ed. 1997). Defendants argue that Defendant Thomas, as an Albemarle employee and Mr. Ray's crew supervisor, is an individual with whom Shaw Constructors, Inc., through Mr. Ray, must deal. Defendants go on to argue that Defendant Thomas received the service of Mr. Ray's labor because he was Mr. Ray's supervisor. The definition relied on by Defendants, an individual with whom one must deal, is the informal definition, and the example provided with this definition is "a tough customer." American Heritage College Dictionary 341 (3d ed. 1997). The Courts finds it hard to believe that the drafters of this formal contract intended its terms to take on informal definitions. The Court is also not convinced that "the mass of mankind would view" Defendant Thomas as a client or customer of Shaw Constructors, Inc. *Health Resources,* 2008 WL 4173646 at *2. Plaintiffs argue that the drafters of the Waiver did not intend to include employees of Albemarle, like Defendant Thomas, under the protection of the Waiver or they would have included the term employees in the language of the Waiver. As stated above, exculpatory contracts must be strictly construed against the party seeking to enforce them. *Jordan,* 362 Ark at 149. In strictly construing the Waiver against Defendant Thomas and considering the plain and ordinary

meaning of the term customer, the Court finds that Defendant Thomas is not a customer of Shaw Constructors, Inc. and thus not covered by the Waiver.[11]

Second, Plaintiffs contend that the damages claimed are not covered by workers' compensation and therefore are not covered by the Waiver. The Waiver reads "I HEREBY WAIVE AND FOREVER RELEASE ANY RIGHTS I MIGHT HAVE to make any claims or to bring suit against any client or customer of Shaw Constructors, Inc. for damages based upon injuries which are covered under such Workers' Compensation statutes." (Doc. 19-2). Because "injuries" immediately preceeds the clause "which are covered by [w]orkers' [c]ompensation statutes," the Court finds that it is the word "injuries" and not the word "damages" that is being modified by the clause. The injury Mr. Ray received to his leg on September 29, 2006, was covered by workers' compensation.[12] All of the damages that Mr. and Mrs. Ray are claiming here resulted from Mr. Ray's September 29, 2006 injury. Therefore, their damages are based upon an injury covered by workers' compensation and are waived, as to Albemarle, pursuant to the Waiver.

The Court finds that there are no genuine issues of material facts as to the enforceability of the Waiver. Additionally, pursuant to the Waiver language, Albemarle is a client or customer of Shaw Constructors, Inc. and the damages claimed by Plaintiffs, against Separate Defendant Albemarle, are covered by the Waiver. However, Separate Defendant Thomas is not covered by the

---

[11] The Court notes that Defendants did not argue that Defendant Thomas fell under the term client.

[12] This is undisputed. Mr. Ray has received and currently is receiving workers' compensation benefits based on his leg injury.

Waiver.[13]

CONCLUSION

For reasons discussed herein and above, the Court finds that Defendants' Third Joint Motion for Summary Judgment should be and hereby is **GRANTED** in part and **DENIED** in part. Plaintiffs' claims against Separate Defendant Albemarle Corporation are dismissed with prejudice. Plaintiffs' claims against Separate Defendant Thomas remain. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, on this 10th day of August, 2009.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

[13] The Court notes that the second joint motion for summary judgment is currently pending on the docket. (Doc. 43). The Court finds that as a result of this opinion the motion is moot as it applies to Defendant Albemarle. However, the motion will remain on the docket and the Court will consider it as it applies to Defendant Thomas.